## IN THE UNITED STATES DISTRICT CO1URT

## FOR THE DISTRICT OF NEW MEXICO

KENNEDY McDOW, SR.,

     Plaintiff,

v.                                                        No. CIV 07-01266 JB/WPL

CHRISTINE M. GONZALES, ROBERTA (ROBIN) NORTON,
THE STATE OF NEW MEXICO, ROXEANNE B. ESQUIBEL,
MELISSA ARMSTRONG, CANON STEVENS, MICHAEL KWASNIEWSKI,
NEW MEXICO STATE POLICE, GEORGE BENAL,
OTERO COUNTY SHERIFF'S OFFICE, JOHN BLANSETT,
NORBERT SANCHEZ, WILLIAM WOLTZ,
LEON LEDBETTER, LISA DELORM, EDUARDO MEDRANO,
ROBBIE VIRDEN, SEROLOGICAL INSTITUTE, THOMAS FEDOR

     Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendants Serological Institute's and

Thomas Fedor's Amended Motion to Dismiss For Failure to State A Claim, filed March 20, 2008

(Doc. 9)("Fedor's Motion to Dismiss"); (ii) the County Defendants'[1] Motion to Dismiss, filed March

31, 2008 (Doc. 16)("County Defendants' Motion to Dismiss"); and (iii) Plaintiff Kennedy McDow,

Sr.'s Motion to Amend Complaint, filed April 13, 2008 (Doc. 19)("Motion to Amend").  The

primary issues are: (i) whether Plaintiff Kennedy McDow, Sr. has stated a cause of action against

Defendants Serological Institute and Thomas Fedor; (ii) whether the Court should dismiss

McDow's Complaint against the County Defendants for alleged violations of 42 U.S.C. § 1983

because they have not accrued; and (iii) whether the Court should allow McDow to amend his

---

[1] The County Defendants consist of the Otero County Sheriff's Office, John Blansett, Norbert Sanchez, William Woltz, Leon Ledbetter, Lisa Delorm, Eduardo Medrano and Robbie Virden. See Doc. 16 at 1.

Complaint.  The Court held a hearing on the motions on June 13, 2008.  Because the Court concludes that McDow has not stated a viable claim against Seriological Institute and Fedor, and because the Court concludes that McDow's § 1983 claims based on malicious prosecution against the County Defendants have not accrued and are therefore barred, the Court will dismiss the Complaint against these ten Defendants and will deny his motion to amend without prejudice to McDow renewing his motion against Seriological Institute and Fedor with the proposed complaint attached to his motion.

## PROCEDURAL BACKGROUND

This case constitutes the third time that McDow has filed suit in this District against these and other defendants based on the same or a similar set of allegations.  All three suits arise out of McDow's November, 2003 arrest and subsequent criminal conviction in New Mexico state court. This Court dismissed with prejudice McDow's first case brought under § 1983, which he filed on January 17, 2006 (while he was a prisoner).  See McDow v. Esquibel, No. CIV 06-0045 JB/LFG. The Court dismissed the case before the Defendants were served[2] and after conducting a sua sponte review of the Complaint under 28 U.S.C. § 1915(e)(2) and making the following observations:

> The Complaint names twenty Defendants and asserts claims of false arrest, false imprisonment, and malicious prosecution.  The Plaintiff alleges that the State

_____

[2] Because the County Defendants apparently remain unaware of McDow's prior § 1983 suit against them, they have not argued that the doctrine of res judicata bars McDow's claims.  The Court thus need not decide any res judicata issues, but still takes judicial notice of the prior suit.  See Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000) ("We note [] that the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001).  Cf. United States v. Ahidley, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court . . . concerning matters that bear directly upon the disposition of the case at hand."), cert. denied, --- U.S. ----, 128 S. Ct. 424 (2007).

> charged him with kidnaping, criminal sexual penetration and contact, intimidation of a witness, and tampering with evidence.  [The Plaintiff alleges that, in] the criminal proceedings, state law enforcement and prosecutorial agents knowingly used false information and misled the court to obtain the warrants, indictment, and conviction.  The state court ultimately convicted the Plaintiff of false imprisonment and evidence tampering.
>
> The Plaintiff further alleges that his public defender attorneys violated his right to counsel by acting "as deputy district attorney[s]," concealing evidence, agreeing to extensions of speedy trial deadlines without his consent, and disclosing privileged information.

McDow v. Esquibel, No. CIV 06-0045 JB/LFG, Memorandum Opinion and Order at 2, filed April 13, 2006 (Doc. 10).  The Court dismissed McDow's claims against the state agencies and state employees acting in their official capacities because "allegations against these Defendants fail to state claims against 'persons' for purposes of § 1983."  McDow v. Esquibel, Memorandum Opinion and Order at 2.

The Court dismissed "claims against Defendants Otero County, Otero County Sheriff Office, and county officers in their official capacities," because the Complaint contained "no allegations that the Sheriff's Office Defendants carried out the false arrest or imprisonment pursuant to a custom or practice of the Sheriff's Office."  Id. at 3.  The Court dismissed McDow's claims against Defendant Roxeanne B. Esquibel, one of the assistant district attorneys who prosecuted the criminal case against McDow, because prosecutors are "immune from a civil suit for damages under § 1983."  McDow v. Esquibel, Memorandum Opinion and Order at 4 (internal quotation marks omitted).  The Court also held that McDow's "allegations do not support claims against the state public defenders [Canon] Stevens [and Michael] Kwasniewski" and dismissed McDow's claims against them.  Id. at 4-5.

The Court in McDow v. Esquibel further held that McDow's allegations against defendant

law-enforcement officers John Blansett, Norbert Sanchez, William Woltz, Eduardo Medrano, Leon Ledbetter, Lisa DeLorm, Robbie Virden, and George Benal, who all also are Defendants in this case, did not "support individual-capacity claims" against them, because they arose "from both the Plaintiff's arrest and the testimony that certain of these Defendants gave." Id. at 5. Because "claims of false arrest, false imprisonment, and malicious prosecution must be premised on a lack of probable cause," and because McDow had been found guilty of some of the criminal charges associated with the law-enforcement officers' testimony, probable cause existed as a matter of law and his claims were barred. See id. (internal quotation marks omitted).

The Court dismissed McDow's Complaint in McDow v. Esquibel "with prejudice, except regarding his §1983 claims against Defendants Otero County, Otero County Sheriff Office, and county officers in their official capacities, which are dismissed without prejudice." Memorandum Opinion and Order at 6. The Court gave McDow "ten days from the entry of this order to file any amended complaint against these Defendants properly alleging that the employees acted pursuant to a policy or custom of the county." Id. McDow did not file an amended complaint, so the Court entered a final judgment in favor of the Defendants. See McDow v. Esquibel, Judgment, No. CIV 06-0045, filed May 25, 2006 (Doc. 12). McDow did not appeal.

Over a year later, on August 3, 2007, McDow filed a petition for federal-habeas relief. See McDow v. King, No. CIV 07-0746 JB/KBM (Doc. 1), filed August 3, 2007 ("Petition"). In his habeas petition, McDow again alleged that his public defenders, who he had named in the 2006 § 1983 suit and who he also names as Defendants in this suit, were ineffective, had a conflict of interest because they had actively participated as assistant district attorneys in his case before they acted as his public defenders, and had withheld favorable evidence from the jury; that the District

4

Attorney's investigator, Defendant Melissa Armstrong, issued a 2003 report stating that Defendant

Robin Norton told her in November 2003 that McDow had beaten and raped other women; and that

Defendant Christine M. Gonzales, whom McDow allegedly had paid for sex, but who contended that

McDow had kidnaped, assaulted and raped her, lied to the police investigators and at McDow's

criminal trial.  See Petition at 3-6, 21.  In her Report and Recommended Disposition, which the

Court later adopted, the Honorable Karen B. Molzen, United States Magistrate Judge, set out the

following procedural history of the case:

> In August 2004, a jury convicted Petitioner of false imprisonment and tampering with evidence, but acquitted him of all pending sexual penetration and intimidation of witness charges.  He was sentenced to a total period of incarceration of three years followed by a mandatory parole term of one year, and given credit for almost a year and a half of presentence confinement.  His attorneys then pursued an unsuccessful direct appeal that concluded in January 2006 when the New Mexico Supreme Court denied certiorari.

> In March 2006, Petitioner was released from jail in New Mexico.  McDow evidently then moved to California, and his parole was supervised there.  Beginning in October 2006, he attempted to initiate further proceedings in the New Mexico state district court from his home in California. . . . Those efforts culminated in a February 2, 2007 order rejecting the tendered state habeas petition on the grounds McDow was no longer incarcerated in, nor under restraint by, the State of New Mexico.

> * * * *

> Meanwhile, McDow petitioned the New Mexico Supreme Court for relief from the district court's denial of his state petition.  It ordered briefing on whether McDow was in custody for state habeas purposes, and then denied review without comment on May 11, 2007.  The federal petition followed in early June 2007, but was sent to the Court's old address and not finally filed until August 2007.

McDow v. King, No. CIV 07-0746 JB/KBM, Proposed Findings and Recommended Disposition at

1-3, filed September 28, 2007 (Doc. 6) (citations, internal quotation marks, and bracket omitted).

The Court dismissed the habeas petition with prejudice because McDow was no longer in custody.

See id., Order Adopting Magistrate Judge's Proposed Findings and Recommended Resolution, filed October 30, 2007 (Doc. 8). McDow did not appeal. McDow subsequently filed this case, again alleging violations of § 1983, on December 15, 2007. See No. CIV 07-1266 JB/WPL, (Doc 1).

In the meantime, Gonzales, who was the victim in McDow's criminal case and is the first named Defendant in this case, filed a civil suit in state court on March 6, 2006, against McDow and the trucking companies for whom he worked. The Defendants removed Gonzales' case to federal court in January 2007. See Gonzales v. McDow, No. CIV 07-0054 MCA/WDS, Doc. 1. In rejecting McDow's request for consolidation with McDow's current case against Gonzales and the other Defendants, the Honorable M. Christina Armijo, United States District Judge, summarizes Gonzales' case as follows:

> Ms. Gonzales, the plaintiff in this case and a defendant in the McDow Lawsuit, accepted a ride that day from Mr. McDow, a commercial truck driver. Ms. Gonzales claims that at some point along U.S. Highway 54 near Carrizozo, New Mexico, Mr. McDow allegedly stopped the vehicle, bound and blindfolded her, threatened her life, and sexually assaulted her. He then abandoned Ms. Gonzales by the roadside and drove away. McDow was subsequently prosecuted in state court and convicted for committing the crime of false imprisonment against Ms. Gonzales.

Gonzales v. McDow, No. CIV 07-0054 MCA/WDS, Memorandum Opinion and Order at 2, filed March 30, 2008 (Doc. 113). Recently, Judge Armijo entered a Judgment in that case.

> Plaintiff Christine Gonzales' claims against Defendant Kennedy McDow, Sr., were duly tried and the jury duly returned its verdict in favor of Plaintiff Christine Gonzales against Defendant Kennedy McDow, Sr., on her claims for negligence, assault, battery, intentional infliction of emotional distress, as well as her claim for damages for false imprisonment and her claim for punitive damages. The jury assessed damages in favor of Plaintiff Christine Gonzales against Defendant Kennedy McDow, Sr. in the sum of fifteen thousand dollars and zero cents ($15,000.00) in compensatory damages and twenty-five thousand dollars and zero cents ($25,000.00) in punitive damages.

Id., Judgment at 1, filed May 30, 2008 (Doc. 164).

## ALLEGATIONS IN THE COMPLAINT

McDow's current Complaint is titled: "Civil Rights Complaint Pursuant to Title 42 U.S.C.A Section 1983." Complaint at 1. Although he was fairly specific in his previous § 1983 Complaint about what each Defendant allegedly did to violate his constitutional rights, McDow's current § 1983 Complaint makes general preliminary statements of alleged fact that encompass all named Defendants. It appears, however, that all of McDow's claims arise out of his November 5, 2003 arrest and August 26, 2004 criminal trial, and that the acts of which he complains allegedly caused his convictions, violated his "core U.S. Constitutional rights," and resulted in his financial losses:

> [O]n November 5, 2003 the plaintiff was arrested on (1) count of kidnapping; (4) counts of criminal sexual penetration in the second degree; (1) count of criminal sexual contact; (2) count of intimidation of a witness (1) count of tampering with evidence. On August 23, 2004 a twelve member jury was assembled for trial on these above said charges Cause No. CR-2003-520. On August 26, 2004 the jury in this criminal trial returned a verdict of Not Guilty on (3) count [sic] of criminal sexual penetration, (2) count [sic] of Intimidation of a witness; The state court of New Mexico directed a verdict of not guilty as to criminal sexual contact (1) count ; [] and the state having dismissed (1) count of criminal sexual penetration; and returning a verdict of Guilty on (1) count of False imprisonment and (1) count of tampering with evidence. The Defendants knowingly, willingly, and intentionally used erroneous statements, and evidence to obtain warrants, which led to a grand jury indictment, a trial, and subsequently leading to be found not guilty, by which resulted in a conviction of just (1) count of Intimidation of a witness, and Tampering with evidence.

> This case, due to the defendant's [sic] actions and chicanery, cause [sic] a severe financial loss upon the plaintiff. The plaintiff [sic] core U.S. Constitutional Rights has [sic] been severely violated with no adequate remedy other than this action to bring closure to this incident.

> The plaintiff is prepared in this case to prove the false testimonies, among other erroneous procedures done by the defendants that will indicate such violations.

> Due to the above said actions done by the defendants, the plaintiff has taken a severe lost [sic] of property, and company earnings, etc. in a considerable high value that warrants federal judicial review. The plaintiff is further prepared to prove against the defendants that will Illustrate gross corruption and a quality of no checks and

> balances within state government to allow state employee's [sic] acting under the color of state law [sic] carry on such methods, with no acknowledgment nor action taken upon the state, within its respective agencies to allow such derelict [sic] of duties performed by law enforcement agencies. District Attorneys office should not be allow [sic] to control both sides. By allowing two Deputy District Attorney [sic] to leave and take over the Public Defenders office violates not just Plaintiff [sic] U.S. Constitutional Rights but others who went throw [sic] the public defenders office. Both Plaintiff trail [sic] attorney [sic] had actively participated, as prosecutors, in the preparation of the State's case against me. This unconscionable conflict of interest requires a Federal Judicial Review.

Complaint at 1-2. McDow divides his Complaint into two "causes of action." He states that the first set of three claims is "[b]ased upon findings of facts pertaining to the criminal proceedings," and on the "defendants' actions of using false information, and misleading the court to keep the plaintiff in custody and to obtain the warrants, indictment, which led to a jury trial having returned a verdict of not guilty on nearly all counts. . . . and returning a verdict of Guilty on (1) count of False imprisonment and (1) count of tampering with evidence." Complaint at 2. McDow's first claim is for "False Imprisonment." He alleges that "the defendants knowingly, willingly, and intentionally used false information to proceed with charging the plaintiff" after his arrest on November 5, 2003. Id. at 2. He contends he "was not given a fair opportunity to proceed to make bail," and that the district attorney "falsely stated . . . that there was [sic] outstanding warrants pending." Id. at 2-3.

McDow's second claim is titled "Violation of Attorney Client Priviledge [sic]." Id. at 3. McDow alleges:

> Defendants concealed evidence at trial knowing that such evidence would point in the direction of an acquittal of possibly all counts listed in the plaintiff's indictment. Furthermore there were statements that were withheld from being entered during trial that would have resulted in a favorable out come for the plaintiff. This said evidence, and statements that was withheld was also considered privilege information from the plaintiff's public defender who carelessly turn [sic] this said privileged information over to the Otero County Sheriffs Department by which this was also turned over to the District Attorneys Office.

Id.  McDow's third claim is titled "Violation of Civil Due Process."  McDow alleges:

> The District Attorney Office has illustrated a blatant abuse of the plaintiff's due
> process right to make bail by stating erroneous information that was misleading to
> the court which led to a denial of the plaintiff's right to make bail.  Furthermore the
> plaintiff suffered financial losses of his company's earnings and the lost of his real
> estate property and Diesel Truck  The plaintiff was further violated by being denied
> his right to a speedy trial based upon the Defendants six month rule.

Id.  McDow's "second cause of action," which consists of two claims, is

> based on the abuses of authority upon the plaintiff, the defendants exceeded beyond
> the question of abuse of what is there [sic] sworn duty to uphold the law instead the
> defendants within its internal operations allows such chicanery in the procedures of
> state employee's [sic] acting under color of state law without any severe reprimands,
> or checks and balances to insure against corruption.

Complaint at 3.  McDow's fourth claim is titled "Abuse of Authority."  He alleges:

> The Defendants Abused there [sic] powers to circumvent the course of justice.
> Employee's [sic] operating under the color of state law bears the responsibility in
> upholding the letter of the law through integrity. The defendants abused there [sic]
> authority by performing there [sic] duties under the iron curtain of the state, utilizing
> this said authority to unjustly pervert the course that would have otherwise made a
> favorable outcome for the plaintiff.

Id.  McDow titles his fifth claim "Dereliction of Duty."  He alleges:

> The Plaintiff asserts this claim of dereliction of duty due to the fact that the
> defendants failed to carry out there [sic] duties as to what they are sworn to uphold.
> The defendants withheld certain documentations in there [sic] reports intentionally
> so that the plaintiff can be prosecuted.  This said withheld [sic] of documents of there
> [sic] reports stemmed from there [sic] investigation that could of made a difference
> in the outcome of justice favorable to the plaintiff.  The defendants made every effort
> to see that such reports would not be admitted in to trial thus making it obvious as
> to the outcome that would have been favorable.

Id. at 3-4.

McDow requests damages in the amount of $400,000.00 "due to the financial loss of

plaintiff's real estate," as well as "compensatory damages against the defendants due to the financial

loss of company earnings," which both apparently occurred while McDow served his prison

sentence for the two criminal convictions.  Id. at 4.  He also requests punitive damages for "mental

anguish and severity of gross intentional affliction and abuse of authority."  Id.

## LAW REGARDING MOTIONS TO DISMISS

The United States Court of Appeals for the Tenth Circuit has set forth new standards courts

should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of

Civil Procedure in a § 1983 cause of action.

> Bell Atlantic Corp. v. Twombly [] reject[ed] the "no set of facts" language of
> Conley[ v. Gibson, 355 U.S. 41, 45-46 (1957)] and announc[ed] a new (or clarified)
> standard: to withstand a motion to dismiss, a complaint must contain enough
> allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----,
> ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  Under this revised standard,
> as we explained in Ridge at Red Hawk, L.L.C. v. Schneider:
>
> > the mere metaphysical possibility that some plaintiff could prove
> > some set of facts in support of the pleaded claims is insufficient; the
> > complaint must give the court reason to believe that *this* plaintiff has
> > a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the
> plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest"
> that he or she is entitled to relief.  Twombly, 127 S. Ct. at 1965.  "Factual allegations
> must be enough to raise a right to relief above the speculative level."  Id.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(applying Bell Atlantic Corp. v.

Twombly in a case brought under § 1983).  The Tenth Circuit emphasized that

> 'plausibility' in this context must refer to the scope of the allegations in a complaint:
> if they are so general that they encompass a wide swath of conduct, much of it
> innocent, then the plaintiffs have not nudged their claims across the line from
> conceivable to plausible.  The allegations must be enough that, if assumed to be true,
> the plaintiff plausibly (not just speculatively) has a claim for relief.

Id. (internal quotation marks, citation, and footnote omitted).

> This requirement of plausibility serves not only to weed out claims that do
> not (in the absence of additional allegations) have a reasonable prospect of success,
> but also to inform the defendants of the actual grounds of the claim against them.

"Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [Bell Atlantic v. Twombly, 127 S. Ct.] at 1965 n. 3.  See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").  The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10.  Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."  Id.

The Third Circuit has noted, and we agree, that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context:  "Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case. . . ."  Phillips, 515 F.3d at 231-32.  A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time.

* * * *

[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.  The Twombly standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." Anderson, 483 U.S. at 646 n. 6, 107 S.Ct. 3034; Harlow, 457 U.S. at 818, 102 S.Ct. 2727. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, Twombly, 127 S.Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

Robbins v. Oklahoma, 519 F.3d at 1248-49.

Thus, in cases in which government actors are also sued in their individual capacities and the plaintiff alleges violation of his constitutional rights, such as due-process rights, "it is particularly important . . .  that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her,

as distinguished from collective allegations against the state." Robbins v. Oklahoma, 519 F.3d at 1250 (emphasis in original).

On June 12, 2008, the Tenth Circuit issued an unpublished opinion affirming a district court's dismissal with prejudice for failure to state a claim on a plaintiff's claim brought under § 1983. See Dalton v. City of Las Vegas, No. 07-2216, 2008 WL 2372695 (10th Cir. June 12, 2008). In the district court, the Honorable Judge Karen B. Molzen, United States Magistrate Judge, ruled "that all of Mr. Dalton's civil rights claims were too conclusory to comply with the pleading standard set forth in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007)." Dalton v. City of Las Vegas, 2008 WL 2372695 at *1. The Tenth Circuit noted that: "'[t]he core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an actionable constitutional violation.'" (quoting Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007)). Id. The Tenth Circuit stated:

> Mr. Dalton's complaint does not challenge an established city procedure as lacking in due process, a claim that would clearly be actionable under § 1983." . . . Mr. Dalton has put forth a simple claim for the state-law tort of conversion, but he has not alleged sufficient facts to proceed under § 1983. He has thus failed to allege an actionable constitutional violation and has failed "to state a [§ 1983] claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. The district court was correct to dismiss the claim.

Dalton v. City of Las Vegas, 2008 WL 2372695 at **1-2.

Because McDow proceeds pro se, the Court liberally construes his Complaint. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). But "[t]he broad reading of the [pro se] plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based." Id.

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be

12

based.  This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

Id.  (citations omitted).  The Tenth Circuit has held that "a court should allow a [pro se] plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."  Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) (emphasis added).  It is not, however, "the proper function of the district court to assume the role of advocate for the pro se litigant."  Hall v. Bellmon, 935 F.2d at 1110

## LAW REGARDING MOTIONS TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay.  Furthermore, where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)(internal citations, quotation marks, and bracket omitted).  See Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc. and stating that resolving the issue

whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court"). "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schls, No. CIV 05-1165 JB/RLP, 2007 WL 1306814 at * 2 (D.N.M. March 12, 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir.2006)). "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim." Burleson v. ENMR-Plateau Tel. Co-op., No. CIV 05-0073 JB/KBM, 2005 WL 3664299 at * 2 (D.N.M. September 23, 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir.2001)).

## LAW REGARDING ACCRUAL OF CLAIMS AND THE STATUTE OF LIMITATIONS IN § 1983 CLAIMS

A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983. The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits. Wilson v. Garcia, 471 U.S. 261, 269, 105 S. Ct. 1938, 85 L. Ed.2d 254 (1985). Federal law, however, determines the date on which the claim accrues and the limitations period starts to run. Wallace[ v. Kato], 127 S. Ct. at 1095. State law governs any tolling of that period, Wilson, 471 U.S. at 269, except that federal law might also allow additional equitable tolling in rare circumstances, Wallace, 127 S. Ct. at 1099-1100. . . . [T]he New Mexico statute of limitations is three years. N.M. Stat. Ann. § 37-1-8.

Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008).

Generally, "[§] 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action," so "[c]laims alleging denial of a fair trial are presumed to have accrued at the time the trial concludes." Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir.1991)(internal quotation marks omitted). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."

Id.

But in Wallace v. Kato, 127 S. Ct. 1091 (2007),  the Supreme Court of the United States clarified and refined when the limitations period begins to run on a  § 1983 claim for false arrest and false imprisonment.  It held that the two torts may both be referred to as a "detention without legal process."  Id. at 1095 (emphasis in original).   The limitations period on such a claim begins to run "when the alleged false imprisonment ends," which occurs when "the victim becomes held pursuant to [legal] process-- when, for example, he is bound over by a magistrate or arraigned on charges." Id. at 1096 (emphasis in original).   "[A]fter [the institution of legal process], unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."  Id. (emphasis in original).

The Tenth Circuit recently issued an opinion applying Wallace v. Kato and further clarifying the difference between a Fourth-Amendment § 1983 false arrest/false imprisonment claim based upon an arrest without a warrant and a Fourth Amendment § 1983 malicious-prosecution claim based upon an arrest with a warrant.

> Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only after the institution of legal process.  In this context, a Fourth Amendment violation can exist only when a plaintiff alleges the legal process itself to be wrongful.  If a plaintiff challenges merely the confinement after the institution of legal process, but not the process itself, the protections offered by the Fourth Amendment do not apply.
>
> Depending on the circumstances of the arrest, a plaintiff can challenge the institution of legal process as wrongful in one of two ways.  If arrested without a warrant – and thus triggering the Fourth Amendment requirements of a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest – a plaintiff can challenge the probable cause determination made during the constitutionally-required probable cause hearing.  Or, if arrested pursuant to a warrant, plaintiff can challenge the probable cause determination supporting the

warrant's issuance.  Either way, the allegation would state a Fourth Amendment violation sufficient to support a § 1983 malicious prosecution cause of action.

In this case, Plaintiffs were detained pursuant to arrest warrants.  At common law, the issuance of an arrest warrant presents a classic example of the institution of legal process.  Plaintiffs' detention was thus preceded by the institution of legal process, triggering the malicious prosecution cause of action.  In challenging that process by alleging the officers knowingly supplied false information in affidavits for the warrants, Plaintiffs based their malicious prosecution claim on the Fourth Amendment right against unreasonable seizures.

Under our cases, a § 1983 malicious prosecution claim includes the following elements:  (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

Wilkins v. DeReyes, Nos. 06-2245 and 06-2260, 2008 WL 2391244 at **6-7 (10th Cir. June 13, 2008)(internal quotation marks, citations, brackets, and footnote omitted)(emphasis in original).

In Wilkins v. DeReyes, the plaintiffs established the second element of their § 1983 claim based on malicious prosecution because the district attorney dismissed murder charges against them after juries twice could not reach a verdict and "mistrials were declared." Id. at **8, 28-29.  In the situation in which a § 1983 plaintiff has been convicted and is in essence challenging the prosecution leading to that conviction, a malicious prosecution claim does not mature until the conviction has been invalidated.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Thus, in Mondragon v. Thompson, the Tenth Circuit confirmed that, "[b]ecause the statute of limitations does not start running before the elements of a claim are satisfied, the statute of limitations for [a] due process claim [based on malicious prosecution] cannot start until the plaintiff has achieved a favorable result in the original action." 519 F.3d at 1083 (footnote omitted).

Accordingly, Heck v. Humphrey requires dismissal of a § 1983 complaint if the claims are based on malicious prosecution unless the plaintiff presents evidence that his related convictions

16

have been overturned.  "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. at 487 (emphasis added).  Those claims are barred until that showing is made -- i.e., no new cause of action may be filed until that time.  See Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999)(holding that, "for § 1983 claims necessarily challenging the validity of a conviction or sentence, Heck delays the rise of the cause of action until the conviction or sentence has been invalidated.  Because the cause of action does not accrue until such time, the applicable statute of limitations does not begin to run until the same time."); Robinson v. Maruffi, 895 F.2d 649, 654-44 (10th Cir. 1990)(holding that § 1983 claim for malicious prosecution accrues when the criminal proceeding has terminated in the plaintiff's favor); Lawson v. Engleman, 67 Fed. Appx. 524, 526 n.2 (10th Cir. 2003)(holding that even "claims for declaratory and injunctive relief are barred under Heck" until a conviction is overturned).

> Although a dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice, when a § 1983 claim is dismissed under *Heck*, the dismissal is without prejudice.  [See] Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003). "If the plaintiff is later successful in overturning his conviction, he is allowed to bring his § 1983 action at that time." Id.

Higgins v. City of Tulsa, 103 Fed. Appx. 648, 651 (10th Cir. 2004) (emphasis in original).

## ANALYSIS

The Seriological Institute and Fedor note that, because their names appear only in the caption of the Complaint and McDow has alleged no facts against them, McDow's allegations are so conclusory and vague that the Court should dismiss the Complaint against them.  The County

Defendants contend that the three-year statute of limitations for § 1983 actions bars all of McDow's claims in this lawsuit and request that the Court dismiss all of his claims against them with prejudice.  The Court largely agrees with the moving Defendants.  Accordingly, the Court will dismiss McDow's Complaint against these ten Defendants and deny his motion to amend.

## I.   McDOW STATES NO CLAIMS AGAINST SERIOLOGICAL INSTITUTE OR FEDOR.

A careful review of McDow's specific claims confirms as correct Seriological Institute's and Fedor's position that McDow has failed to state any facts that mention them or that could be construed to include them in his Complaint.  It is therefore impossible to determine "who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  Robbins v. Oklahoma, 519 F.3d at 1250 (emphasis in original).  In opposition to Fedor's motion, instead of setting forth any facts showing how these two defendants had any involvement in McDow's arrest and prosecution, McDow makes only a conclusory statement that "the above said defendants are vicariously responsible for there [sic] actions which contributed to the plaintiff's injuries and severe losses."  McDow's Reply to the Defendants Answer at 2, ¶ 9, filed April 17, 2008 (Doc. 23).[3]

"Section 1983 is not a vicarious liability provision.  Every governmental official in the chain of command is liable only for his own conduct.  In any § 1983 action, the plaintiff must demonstrate the liability of each supervisory official against whom a claim is made."  Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1155 (10th Cir. 2006).  See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th

_____

[3]  McDow improperly included his response to Fedor's motion as a paragraph in his reply to the County Defendants' Amended Answer.  See D.N.M. Administrative Order 92-88 (requiring that, "in the case of responsive pleadings, a separate pleading addressing each motion" be submitted for each matter upon which a ruling is sought).  The Court has, however, considered this response.

Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").  At the June 13, 2008 hearing, although McDow stated he now knew "of new injuries from what I find out about their involvement in the case" after Gonzales testified in her civil case against him, McDow did not offer to explain what their involvement was.  Transcript of Hearing at 11:4-6 (taken June 13, 2008)("Tr.")(McDow).[4]  Because McDow has failed to state any facts that state a claim against either Seriological Institute or Fedor, and he has not  suggested that there are any facts on which to base a claim against these Defendants in his response, the Court will dismiss his Complaint against them.  See Hall v. Bellmon, 935 F.2d at 1110.

While it is generally proper to dismiss with prejudice a pro se plaintiff's complaint that fails to state a claim, here, the claims against Seriological Institute and Fedor are so vague that the Court does not know what "with prejudice" would mean in this context.  McDow has effectively stated no claims against these two Defendants.  There is nothing to give meaningful preclusive effect.  Accordingly, to avoid any confusion or debate in the future, the Court will dismiss McDow's claims against the Seriological Institute and Fedor without prejudice.  This approach seems most appropriate given that the Court is also giving McDow an opportunity to renew his motion to amend regarding the Seriological Institute and Fedor.

## II.   McDOW'S § 1983 CLAIMS ARE BARRED.

McDow's Complaint states that he was arrested with a warrant on November 5, 2003, and that his trial concluded on August 26, 2004, and resulted in two convictions.  See Complaint at 1.  "Heck applies only to those claims that would necessarily imply the invalidity of any conviction

---

[4]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page numbers.

that might have resulted from prosecution of the dismissed [] charge." Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999). "[E]ach [] claim[] must be assessed individually to determine whether it has yet matured, and if so, when it matured for purposes of applying the statute of limitations." Id. (emphasis added). The County Defendants' motion to dismiss was based on their contention that the statute of limitations had run on any claims arising under § 1983 and for any claims arising under the New Mexico Tort Claims Act that McDow had not alleged. See Doc. 16 at 2-3. At the hearing, the attorney for the County Defendants stated that she had relied in her brief on a statute-of-limitations defense based on the fact that McDow's was acquitted of four of the six crimes for which he was charged -- that is, she contended that the complaint against the County Defendants had to be dismissed with prejudice because McDow's acquittals occurred in August, 2004, and the three-year statute of limitations for § 1983 claims had run. See Tr. at 12:1-10 (Court & Martinez). But the accrual of a § 1983 claim is determined by looking at the factual predicate of each claim to determine whether the claim calls into question the validity of a conviction-- whether the plaintiff was also acquitted of certain charges during the same trial in which he was convicted of other charges is irrelevant unless the plaintiff bases a § 1983 damages claim on those acquittals. See Beck v. City of Muskogee Police Dep't, 195 F.3d at 557. When the Court focused its inquiry on the difference between false arrest/false imprisonment claims and malicious prosecution claims and the fact that § 1983 claims analogous to malicious prosecution do not accrue until the plaintiff achieves a favorable result in the underlying criminal proceedings, the attorney for the County Defendants agreed that the Court's analysis "is accurate because any damages arise out of the charges for which he was convicted." Tr. at 13:23-25 (Martinez).

Even after being offered an opportunity at the hearing to comment on when the statute of

limitation would start to run on his § 1983 claims, McDow did not contend that he suffered damages as a result of being charged of crimes for which he was acquitted, nor does he argue that the Defendants committed constitutional violations that do not call into question the validity of his convictions.  Cf. Heck v. Humphrey, 512 U.S. at 487 (stating that, where a "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed")(emphasis added).  Because McDow's claim for damages is based on losses allegedly resulting from the two criminal convictions that he contends were wrongfully obtained by the false testimony, errors, and abuses of state and county employees and trial witnesses, the Court need not determine whether the statute of limitations has run on charges for which McDow was acquitted.  "Heck[ v. Humphrey] requires a court considering a § 1983 damage claim relating to a plaintiff's conviction to determine whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction; if so, then the plaintiff must obtain invalidation of the conviction before pursuing his action for damages."  Laurino v. Tate, 220 F.3d 1213, 1217 (10th Cir. 2000)(emphasis added).   The Court has examined each of McDow's claims to determine whether they call into question the validity of his convictions and whether they are analogous to malicious prosecution claims.

McDow contends that "the Defendants knowingly, willingly, and intentionally used erroneous statements, and evidence to obtain warrants, which led to a grand jury indictment, a trial, and subsequently leading to . . . a conviction."  Id..  It appears that this claim relates to the county law-enforcement officers who obtained the warrants for his arrest.  Because the officers used the legal process of a warrant, this claim is construed as one for malicious prosecution.  See Wallace v. Kato, 127 S. Ct. at 1095-96; Wilkins v. DeReyes, 2008 WL 2391244 at *7 (stating that

"challenging  [the legal] process [of a warrant] by alleging the officers knowingly supplied false information in affidavits for the warrants, Plaintiffs based their malicious prosecution claim on the Fourth Amendment right against unreasonable seizures); Mondragon v. Thompson, 519 F.3d at 1082 ("If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.  If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution.").

McDow's claim that "the defendants knowingly, willingly, and intentionally used false information to proceed with charging the plaintiff" after his arrest, Complaint at 2, appears to be against the state prosecutors and is a malicious prosecution/due-process claim because it, too, occurred after legal proceedings commenced.    See Wallace v. Kato, 127 S. Ct. at 1095-96; Mondragon v. Thompson, 519 F.3d at 1083.  McDow's claims that "Defendants concealed evidence at trial" and that his "public defender [] carelessly turn [sic]. . .  privileged information over to the Otero County Sheriffs Department by which this was also turned over to the District Attorneys Office," Complaint at 2, are also against the state prosecutors and public defenders and are also malicious prosecution/due-process claims.

McDow's claims that "[t]he District Attorney Office has illustrated a blatant abuse of the plaintiff's due process right to make bail by stating erroneous information . . . [and by denying McDow] his right to a speedy trial" similarly are against the state prosecutor and are malicious prosecution/due-process claims.  While it is less clear whom McDow is including in his claim for "abuse of authority," his allegations that the claim is based on "procedures of state employee's [sic] acting under color of state law" and that the "defendants abused there [sic] authority by performing

there [sic] duties under the iron curtain of the state, utilizing this said authority to unjustly pervert the course that would have otherwise made a favorable outcome for the plaintiff," Complaint at 3, indicates that the claims are against the state employees involved in his arrest, prosecution, or defense, and are for malicious prosecution/due-process violations, see Mondragon v. Thompson, 519 F.3d at 1083.

McDow's claim for "dereliction of duty," which is based on "procedures of state employee's [sic] acting under color of state law," Complaint at 3, also appears to be against the district attorneys who prosecuted his case. McDow asserts that these "defendants withheld certain documentations in there [sic] reports intentionally so that the plaintiff can be prosecuted . . . and made every effort to see that such reports would not be admitted in to trial." Id. at 3-4. Because it relates to his trial, this claim is also one for malicious prosecution/due process. See Mondragon v. Thompson, 519 F.3d at 1083.

All of McDow's claims are brought under § 1983 and all challenge the validity of his convictions. Because he was arrested with legal process, i.e., with a warrant, McDow's § 1983 claims based on his arrest are for due-process violations analogous to malicious prosecution. See id. at 1082-83; Wilkins v. DeReyes, 2008 WL 2391244 at *7. Similarly, McDow's § 1983 claims based on his allegations that state and county employees, including the sheriff's department officers were somehow "derelict" in their duties; that his attorneys were ineffective, had conflicts of interest, or violated attorney-client privileges, causing him to be wrongly convicted; and that companies and/or witnesses intentionally lied about reports, investigations, or gave false testimony about what occurred, all fall under the rubric of a due-process/malicious-prosecution violation. See Mondragon v. Thompson, 519 F.3d at 1083 ("After the institution of legal process, any remaining constitutional

claim is analogous to a malicious prosecution claim.").  Any viable § 1983 claims he could potentially state will not begin to accrue, and are therefore barred, until McDow "has achieved a favorable result in the original action."  Id.  Because McDow's convictions have been upheld on appeal and both his state and his federal habeas petitions have been denied with no appeal taken from those denials, it is unlikely that these claims will ever accrue.

In opposing the County Defendants' motion to dismiss, McDow refers to the civil case that Defendant Gonzales filed and contends:  "Once discovery was turned over by [the] Attorneys for Plaintiff Christine Gonzales and ROXEANNE B. ESQUIBEL, 12 Judicial District Attorney office. Plaintiff then had knowledge of the fact of injury and who caused it."  McDow's Response in Opposition to County Defendants' Motion to Dismiss at 2, filed April 12, 2008 (Doc. 18).  At the June 13, 2008 hearing, McDow again focused on the "facts" that he contends the discovery rule applies to:  (i) "I was being not just tried by the state[,] I've been represented by the state," Tr. at 15:17-18 (McDow); (ii) that he did not know until "May 12th[, 2008] when it was testified that the county knowingly knew when they filed these charges that they were false. " id. at 17:14-16 (McDow)[5]; and (iii) "it wasn't until May 12th[, 2008] when Mrs. Gonzale[s] . . . was asked, [']when

---

[5] The Court notes that, even if Gonzales recanted her statement that she was kidnapped from the truck stop in Vaughn, it would not necessarily mean that McDow could not be charged with, and found guilty of, kidnapping.  In New Mexico, kidnapping includes taking or confining a victim by deception with the intent to inflict a sexual offense on the victim. See N.M.S.A. 1978, § 30-4-1.  A "kidnapping begins when the victim is initially confined and ends when the victim is released." State v. Dombos, 2008-NMCA-035, ¶ 12, 180 P.3d 675, 680.  Thus, even if Gonzales willingly accepted a ride with McDow, as he contends and she later apparently admitted, if his intent at the time he drove away with her included the intent to commit a sexual offense, he might be convicted of kidnapping even if Gonzales initially went with him voluntarily.  Gonzales never recanted her allegation that McDow raped her, thus investigators and prosecutors could properly go forward with a charge that included kidnapping and the lesser-included offense of false imprisonment, for which McDow was convicted.

did you tell law enforcement that you were not kidnapped from a truck stop[,']" id. at 18:8-13 (McDow).  McDow's first § 1983 Complaint, filed in March 2006, and his answer to Gonzales' amended civil complaint against him filed in December 2006, however, demonstrate as a matter of law that McDow was aware of the wrongful or illegal behavior that he alleges caused his damages before he obtained discovery in Gonzales' case against him.  See McDow v. Esquibel, No. CIV 06-0045 JB/LFG, Memorandum Opinion and Order at 2, filed April 13, 2006 (Doc. 10); Gonzales v. McDow, No. CIV 06-0054, Doc. 1, Ex. C.  As Gonzales' attorney pointed out at the June 13, 2008 hearing, see Tr. at 45, in his original answer filed April 4, 2006, and in his answer to Gonzales' amended complaint filed on December 15, 2006, McDow states:  "Defendant will produce additional facts to show plaintiff repeatedly changed her story, starting from alleging the kidnapping of herself and an anonymous friend.  Then she changed her story to only she was kidnapped from a truck stop in Vaughn, New Mexico.  She later changed her statement again, to admitting that she was not kidnapped."  Gonzales v. McDow, No. CIV 06-0054, Doc. 1, Ex. C  at 2.  When the Court pressed McDow further to explain why he contended that the discovery rule applies, McDow stated, "At that time I was not fully aware of the damages that the county and the state did."  Tr. at 18:22-23 (McDow)(emphasis added).  Critically, however, McDow's argument that the discovery rule extends the statute of limitations on his § 1983 claims is irrelevant, because the "evidence" he claims to have just discovered challenges his conviction for false imprisonment; his § 1983 claims for malicious prosecution will not accrue until he obtains a favorable result in his criminal case; and he has not stated any facts indicating that he has any other sort of § 1983 claim associated with the "newly discovered" evidence.

McDow does not contend in his written response to the motion to dismiss  that he has viable

state-law causes of action that he did not plead that are not barred by statutes of limitation.  He stated

at the hearing, however, that, regarding the County Defendants, he "was going to . . . just go away

from the 1983 and go to New Mexico tort, but you know I'll just have to see what your rulings are

today."  Tr. at 32:14-17 (McDow).  He again contended that the discovery rule should apply to the

relevant statute of limitations because the state "prevented me from knowing the full injuries, since

the state not just prosecuted me but represented me . . . and as representing me they hid a lot of

information."  Id. at 33:3-7 (McDow).  But even if the Court liberally construed his Complaint to

potentially include state-law claims for malicious prosecution,  intentional infliction of emotional

distress, assault, battery, or false imprisonment, they, too would most likely be barred.  New

Mexico's personal-injury statute provides that "[a]ctions must be brought . . . for an injury to the

person or reputation of any person, within three years."  N.M.S.A. 1987, § 37-1-8.  And "actions

against a . . . public employee for torts shall be forever barred unless such action is commenced

within two years after the date of occurrence resulting in loss . . ."  N.M.S.A. 1978, § 41-4-15.  See

Sam v. Sam, 2006-NMSC-022, ¶ 23, 134 P.3d 761, 767.

McDow was arrested on November 5, 2003, and convicted on August 26, 2004.  Any

potentially viable state-law claims against the County Defendants based on McDow's arrest and

prosecution accrued, at the latest, on August 26, 2006, and his December 15, 2007, Complaint is,

therefore, untimely.  See United States v. Hurst, 322 F.3d 1256, 1260 (10th Cir. 2003)(holding that,

generally, "when a statute of limitations is measured in years, the last day for instituting the action

is the anniversary date of the relevant act, . . . even when the intervening period includes the extra

leap-year day") (internal quotation marks omitted). The Court will dismiss McDow's § 1983

Complaint against the County Defendants without prejudice under Heck v. Humphrey.  See Steele

v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003)("For example, when a § 1983 claim is dismissed under Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), for failure to invalidate a conviction before bringing the civil-rights action, the dismissal should be without prejudice.").

## III.    McDOW MAY NOT AMEND HIS COMPLAINT AT THIS TIME.

In support of his motion to amend, McDow states that he "seeks to further amend the complaint to add a claim and Defendant and to correct allegations based on the discovery." McDow's Motion to Amend at 1 (Doc. 19).  The Court presumes that the "discovery" McDow refers to is discovery in Gonzales' civil case against him, as no discovery has yet taken place in this case. McDow does not, however, explain what new facts he wishes to add to his Complaint or what additional Defendant he desires to name, and he has not attached a proposed amended complaint to his motion as this District's local rule requires.  See D.N.M.LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend.").  Because he neither offers facts in his motion to amend that support amendment nor attaches a proposed amended complaint to his motion to amend, the Court will deny the motion.    See Joseph v. U.S. Federal Bureau of Prisons, No. 00-1208, 2000 WL 1532783, *4 (10th Cir. Oct. 16, 2000) (affirming denial of pro se plaintiff's motion to amend complaint where the plaintiff "offered no new facts to include in his complaint to cure any deficiencies and . . . did not tender an amended complaint to the court").  Cf. Fritchey v. I.N.S., No. 96-2014, 1996 WL 384556, *1 (10th Cir. July 10, 1996) (holding in the circumstances in which no answer had been filed and the plaintiff had the right to amend his complaint under rule 15(a) of the Federal Rules of Civil Procedure  that, "[a]lthough the district's local rules provide that a proposed amendment to a pleading must accompany a motion to amend, a pro se plaintiff's failure to attach

a copy of the proposed amended complaint to his motion will not defeat his right to amend where the motion sets forth the substance of the proposed amendment.  See D.N.M.R. 15.1; Zaidi v. Ehrlich, 732 F.2d 1218, 1220 (5th Cir.1984).").  Although he contends that he "wish[es] to correct [the] oversight" of failing to state a claim against Seriological Institute and Fedor, see Motion to Amend at 2, McDow does not explain what facts he would add to do so.

Further, because McDow's Complaint focuses solely on events occurring from November 5, 2003, through April 26, 2004, that are related to his arrest and convictions, any § 1983 claims against Seriological Institute and Fedor or any other Defendant are barred because they will not accrue until McDow overturns his convictions, and they are unlikely to accrue under the circumstances in this case, in which McDow's appeal and his state and federal habeas petitions have been denied and he either has not further appealed from those denials or appeal has been denied. As mentioned previously, McDow has not alleged in his motion to amend that he has any other claims against the County Defendants.  To allow McDow to amend his Complaint, therefore, would likely be futile.  See Frank v. U.S. West, Inc., 3 F.3d at 1366 (noting that refusing leave to amend is justified if amendment would be futile); Bell v. City of Topeka, KS, No. 07-3204, 2008 WL 2192152, **2-3 (10th Cir. May 23, 2008)(affirming denial of request to amend complaint because the plaintiff sought "to amend the complaint after the statute of limitations has run" and such an amendment would be futile).  Justice does not require allowing amendment in this case at this time, particularly where McDow filed a similar case against the County Defendants previously and did not take advantage of the Court's invitation to timely amend his Complaint.

The Court also does not see how McDow could effectively amend against the State Defendants in the circumstances in which his claims all relate to the arrest occurring in November

2003 and the trial in August 2004.  Any claim related to these events, whether it is a state-law or § 1983 claim, would most likely be barred either by the two-year statute of limitations for state-law tort claims against government officials or because it would not yet have accrued under § 1983.  The Tenth Circuit in <u>Hall v. Bellmon</u> instructs courts that they do not have to give pro se plaintiffs opportunities to amend when they have failed to allege facts about which they were aware at the time of the incident.  Defendants should not have to keep defending against multiple bites of the apple.

McDow also does not allege in his motion to amend that he has any claims, besides § 1983 claims, against the Seriological Institute and Fedor that are related to his arrest and convictions. Indeed, he has said that his claims against them are based on vicarious liability for the other Defendants' actions that violated § 1983.  When only § 1983 claims have been alleged in a complaint, as here, on a record that is relatively clear, and given <u>Hall v. Bellmon's</u> instructions that the Court should not advocate for a pro se plaintiff or supply or suggest facts that the pro se plaintiff has not stated, the Court should be careful to explain that, by extending yet another opportunity to amend a complaint that has been dismissed, it is not suggesting or implying that other claims may exist.  Nevertheless, the Seriological Institute and Fedor appear to be private parties.  It is also unclear what claims McDow is attempting to bring against them, and he has stated he wants to "add a claim and Defendant and to correct allegations based on the discovery."  Motion to Amend at 1. There may be other, longer statutes of limitation, or different accrual rules, against the Seriological Institute and Fedor on claims other than § 1983.  Accordingly the Court will deny McDow's motion as to the Seriological Institute and Fedor without prejudice to McDow renewing his motion against them in a proper form.  If McDow decides to renew his motion to amend against these two

29

Defendants, he must attach the proposed amended complaint.  At that time, the Court and the Defendants will be in a better position to determine whether the amendment would be futile.

**IT IS ORDERED** that Serological Institute's and Thomas Fedor's Amended Motion to Dismiss For Failure to State A Claim (Doc. 9) is granted; the County Defendants' Motion to Dismiss (Doc. 16) is granted and McDow's Complaint against Serological Institute, Thomas Fedor, and the County Defendants is dismissed; and McDow's Motion to Amend Complaint (Doc. 19) is denied without prejudice to him renewing his motion, within ten days of the date of the entry of this order, with the proposed complaint against the Serological Institute and Fedor attached to his motion.[6]

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Kennedy McDow, Sr.
Atwater, California

    *Plaintiff Pro Se*

Rob T. Booms
Butt, Thornton & Baehr
Albuquerque, New Mexico

    *Attorneys for Defendants Serological Institute and Thomas Fedor*

---

[6] McDow has fourteen days from the date of the filing of this order to respond to the State Defendants' and Gonzales' notices of their joinder in the County Defendants' motion to dismiss. <u>See</u> Docs. 37, 39.

Louren Oliveros
Mark Pustay
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

   *Attorneys for Defendant Christine M. Gonzales*

Stephen G. French
Kerri L. Allensworth
French & Associates, P.C.
Albuquerque, New Mexico

   *Attorneys for Defendants State of New Mexico, New Mexico State Police, Roxanne
   B. Esquibel, Melissa Armstrong, and George Bernal*

Patrick Simpson
Legal Bureau for the State Risk Management Division
Santa Fe, New Mexico

   *Attorneys for Defendants Canon Stevens and Michael Kwasniewski*


Jonlyn M. Martinez
William D. Slease
Slease & Martinez, P.A.
Albuquerque, New Mexico

   *Attorneys for Defendants Otero County Sheriff's Office, John Blansett, Norbert
   Sanchez, William Woltz, Leon Ledbetter, Lisa Delorm, Eduardo Medrano, and Robbie
   Virden*