IN THE UNITED STATES DISTRICT CO1URT

FOR THE DISTRICT OF NEW MEXICO

KENNEDY McDOW, SR.,

      Plaintiff,

v.                                                                    No. CIV 07-1266 JB/WPL

CHRISTINE M. GONZALES, ROBERTA (ROBIN) NORTON,
THE STATE OF NEW MEXICO, ROXEANNE B. ESQUIBEL,
MELISSA ARMSTRONG, CANON STEVENS, MICHAEL KWASNIEWSKI,
NEW MEXICO STATE POLICE, GEORGE BENAL,
OTERO COUNTY SHERIFF'S OFFICE, JOHN BLANSETT,
NORBERT SANCHEZ, WILLIAM WOLTZ,
LEON LEDBETTER, LISA DELORM, EDUARDO MEDRANO,
ROBBIE VIRDEN, SERIOLOGICAL INSTITUTE, THOMAS FEDOR

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (I) Defendant Christine M. Gonzales' Notice

of Joinder of Doc. 16, filed June 12, 2008 (Doc. 37); (ii) Defendants State of New Mexico, New

Mexico State Police, Roxanne B. Esquibel, Melissa Armstrong, George Bernal, Canon Stevens and

Michael Kwasniewski's Notice of Joinder of Doc. 16, filed June 13, 2008 (Doc. 39); and (iii)

Plaintiff Kennedy McDow, Sr.'s Motion for Extension of Time to Amend, filed June 30, 2008 (Doc.

41). The Court held a hearing on July 28, 2008. The primary issues are: (I) whether Plaintiff

Kennedy McDow, Sr. has stated a cause of action against Defendant Christine M. Gonzales; and (ii)

whether the Court should dismiss McDow's Complaint against the State Defendants for alleged

violations of 42 U.S.C. § 1983 because they have not accrued. Because the Court concludes that

McDow has not stated a viable claim against Gonzales, and because McDow's § 1983 claims based

on malicious prosecution against the State Defendants have not accrued and are therefore barred,

the Court will dismiss the Complaint against these Defendants. Because McDow has withdrawn his

motion for an extension of time in which to amend his Complaint against the Seriological Institute and Thomas Fedor, the Court will terminate that motion.

## PROCEDURAL BACKGROUND

This case constitutes the third time that McDow has filed suit in this District against these and other defendants based on the same or a similar set of allegations.  All three suits arise out of McDow's November, 2003 arrest and subsequent criminal conviction in New Mexico state court.  This Court dismissed with prejudice McDow's first case brought under § 1983, which he filed on January 17, 2006, while he was a state prisoner.  See McDow v. Esquibel, No. CIV 06-0045 JB/LFG.  The Court dismissed the case before the Defendants were served,[1] after conducting a sua sponte review of the Complaint under 28 U.S.C. § 1915(e)(2).   The Court made the following observations:

> The Complaint names twenty Defendants and asserts claims of false arrest, false imprisonment, and malicious prosecution.  The Plaintiff alleges that the State charged him with kidnaping, criminal sexual penetration and contact, intimidation of a witness, and tampering with evidence.  [The Plaintiff alleges that, in] the criminal proceedings, state law enforcement and prosecutorial agents knowingly used false information and misled the court to obtain the warrants, indictment, and conviction.  The state court ultimately convicted the Plaintiff of false imprisonment and evidence tampering.
>
> The Plaintiff further alleges that his public defender attorneys violated his right to counsel by acting "as deputy district attorney[s]," concealing evidence,

---

[1]  Because the County Defendants apparently remain unaware of McDow's prior § 1983 suit against them, they have not argued that the doctrine of res judicata bars McDow's claims.  The Court thus need not decide any res judicata issues, but still takes judicial notice of the prior suit.  See Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000) ("We note [] that the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001). Cf. United States v. Ahidley, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court . . . concerning matters that bear directly upon the disposition of the case at hand."), cert. denied, --- U.S. ---, 128 S. Ct. 424 (2007).

agreeing to extensions of speedy trial deadlines without his consent, and disclosing privileged information.

McDow v. Esquibel, No. CIV 06-0045 JB/LFG, Memorandum Opinion and Order at 2, filed April 13, 2006 (Doc. 10). The Court dismissed McDow's claims against the state agencies and state employees acting in their official capacities, because "allegations against these Defendants fail to state claims against 'persons' for purposes of § 1983." McDow v. Esquibel, Memorandum Opinion and Order at 2.

The Court dismissed  "claims against Defendants Otero County, Otero County Sheriff Office, and county officers in their official capacities," because the Complaint contained "no allegations that the Sheriff's Office Defendants carried out the false arrest or imprisonment pursuant to a custom or practice of the Sheriff's Office." Id. at 3. The Court dismissed McDow's claims against Defendant Roxeanne B. Esquibel, one of the assistant district attorneys who prosecuted the criminal case against McDow, because prosecutors are "immune from a civil suit for damages under § 1983." McDow v. Esquibel, Memorandum Opinion and Order at 4 (internal quotation marks omitted). The Court also held that McDow's "allegations do not support claims against the state public defenders [Canon] Stevens [and Michael] Kwasniewski," and dismissed McDow's claims against them. Id. at 4-5.

The Court in McDow v. Esquibel further held that McDow's allegations against defendant law-enforcement officers John Blansett, Norbert Sanchez, William Woltz, Eduardo Medrano, Leon Ledbetter, Lisa DeLorm, Robbie Virden, and George Benal, who all are also Defendants in this case, did not "support individual-capacity claims" against them, because they arose "from both the Plaintiff's arrest and the testimony that certain of these Defendants gave." Id. at 5. Because "claims of false arrest, false imprisonment, and malicious prosecution must be premised on a lack of

probable cause," and because McDow had been found guilty of some of the criminal charges associated with the law-enforcement officers' testimony, probable cause existed as a matter of law and his claims were barred.  See id. (internal quotation marks omitted).

The Court dismissed McDow's Complaint in McDow v. Esquibel "with prejudice, except regarding his § 1983 claims against Defendants Otero County, Otero County Sheriff Office, and county officers in their official capacities, which are dismissed without prejudice." Memorandum Opinion and Order at 6.  The Court gave McDow "ten days from the entry of this order to file any amended complaint against these Defendants properly alleging that the employees acted pursuant to a policy or custom of the county." Id.  McDow did not file an amended complaint, so the Court entered a final judgment in favor of the Defendants.  See McDow v. Esquibel, Judgment, No. CIV 06-0045, filed May 25, 2006 (Doc. 12).  McDow did not appeal.

Over a year later, on August 3, 2007, McDow filed a petition for federal-habeas relief.  See McDow v. King, No. CIV 07-0746 JB/KBM (Doc. 1), filed August 3, 2007 ("Petition").  In his habeas petition, McDow again alleged that his public defenders, whom he had named in the 2006 § 1983 suit and whom he also names as Defendants in this suit, were ineffective, had a conflict of interest because they had actively participated as assistant district attorneys in his case before they acted as his public defenders, and had withheld favorable evidence from the jury; that the District Attorney's investigator, Defendant Melissa Armstrong, issued a 2003 report stating that Defendant Robin Norton told her in November 2003 that McDow had beaten and raped other women; and that Defendant Christine M. Gonzales, whom McDow allegedly had paid for sex, but who contended that McDow had kidnaped, assaulted and raped her, lied to the police investigators and at McDow's criminal trial.  See Petition at 3-6, 21.  In her Report and Recommended Disposition, which the Court later adopted, the Honorable Karen B. Molzen, United States Magistrate Judge, set out the

-4-

following procedural history of the case:

> In August 2004, a jury convicted Petitioner of false imprisonment and tampering with evidence, but acquitted him of all pending sexual penetration and intimidation of witness charges. He was sentenced to a total period of incarceration of three years followed by a mandatory parole term of one year, and given credit for almost a year and a half of presentence confinement. His attorneys then pursued an unsuccessful direct appeal that concluded in January 2006 when the New Mexico Supreme Court denied certiorari.
>
> In March 2006, Petitioner was released from jail in New Mexico. McDow evidently then moved to California, and his parole was supervised there. Beginning in October 2006, he attempted to initiate further proceedings in the New Mexico state district court from his home in California. . . . Those efforts culminated in a February 2, 2007 order rejecting the tendered state habeas petition on the grounds McDow was no longer incarcerated in, nor under restraint by, the State of New Mexico.
>
> * * * *
>
> Meanwhile, McDow petitioned the New Mexico Supreme Court for relief from the district court's denial of his state petition. It ordered briefing on whether McDow was in custody for state habeas purposes, and then denied review without comment on May 11, 2007. The federal petition followed in early June 2007, but was sent to the Court's old address and not finally filed until August 2007.

McDow v. King, No. CIV 07-0746 JB/KBM, Proposed Findings and Recommended Disposition at 1-3, filed September 28, 2007 (Doc. 6) (citations, internal quotation marks, and bracket omitted). The Court dismissed the habeas petition with prejudice because McDow was no longer in custody. See id., Order Adopting Magistrate Judge's Proposed Findings and Recommended Resolution, filed October 30, 2007 (Doc. 8). McDow did not appeal. McDow subsequently filed this case, again alleging violations of § 1983, on December 15, 2007. See Complaint at 1 (Doc. 1)("Complaint").

In the meantime, Gonzales, who was the victim in McDow's criminal case and is the first named Defendant in this case, filed a civil suit in state court on March 6, 2006, against McDow and the trucking companies for whom he worked. The Defendants removed Gonzales' case to federal court in January 2007. See Gonzales v. McDow, No. CIV 07-0054 MCA/WDS, Doc. 1. In rejecting

McDow's request for consolidation with McDow's current case against Gonzales and the other

Defendants, the Honorable M. Christina Armijo, United States District Judge, summarized

Gonzales' case as follows:

> Ms. Gonzales, the plaintiff in this case and a defendant in the McDow Lawsuit, accepted a ride that day from Mr. McDow, a commercial truck driver.  Ms. Gonzales claims that at some point along U.S. Highway 54 near Carrizozo, New Mexico, Mr. McDow allegedly stopped the vehicle, bound and blindfolded her, threatened her life, and sexually assaulted her.  He then abandoned Ms. Gonzales by the roadside and drove away.  McDow was subsequently prosecuted in state court and convicted for committing the crime of false imprisonment against Ms. Gonzales.

Gonzales v. McDow, No. CIV 07-0054 MCA/WDS, Memorandum Opinion and Order at 2, filed

March 30, 2008 (Doc. 113).  Judge Armijo entered a Judgment in that case.

> Plaintiff Christine Gonzales' claims against Defendant Kennedy McDow, Sr., were duly tried and the jury duly returned its verdict in favor of Plaintiff Christine Gonzales against Defendant Kennedy McDow, Sr., on her claims for negligence, assault, battery, intentional infliction of emotional distress, as well as her claim for damages for false imprisonment and her claim for punitive damages.  The jury assessed damages in favor of Plaintiff Christine Gonzales against Defendant Kennedy McDow, Sr. in the sum of fifteen thousand dollars and zero cents ($15,000.00) in compensatory damages and twenty-five thousand dollars and zero cents ($25,000.00) in punitive damages.

Id., Judgment at 1, filed May 30, 2008 (Doc. 164).  The parties stipulated to dismissal of McDow's

appeal in that case on July 3, 2008.  See id., Order, filed July 3, 2008 (Doc. 165).

On June 13, 2008, the Court held a hearing on (I) Defendants Seriological Institute's and

Thomas Fedor's Amended Motion to Dismiss For Failure to State A Claim, filed March 20, 2008

(Doc. 9)("Fedor's Motion to Dismiss"); (ii) the County Defendants'[2] Motion to Dismiss, filed March

31, 2008 (Doc. 16)("County Defendants' Motion to Dismiss"); and (iii) Plaintiff Kennedy McDow,

---

[2]  The County Defendants consist of the Otero County Sheriff's Office, John Blansett, Norbert Sanchez, William Woltz, Leon Ledbetter, Lisa Delorm, Eduardo Medrano and Robbie Virden.  See County Defendants' Motion to Dismiss at 1 (filed March 31, 2008)(Doc. 16).

Sr.'s Motion to Amend Complaint, filed April 13, 2008 (Doc. 19)("Motion to Amend").  The Court concluded that McDow had not stated a viable claim against Seriological Institute and Fedor.  The Court also concluded that McDow's § 1983 claims based on malicious prosecution against the County Defendants have not accrued and are therefore barred.  The Court dismissed the Complaint against these ten Defendants and denied McDow's motion to amend without prejudice to him renewing his motion against Seriological Institute and Fedor with the proposed complaint attached to his motion within ten days of the filing of the Order.  The Court also gave McDow "fourteen days from the date of the filing of this order to respond to the State Defendants' and Gonzales' notices of their joinder in the County Defendants' motion to dismiss."  Order at 30 n. 6, filed June 23, 2008.

On June 30, 2008 McDow filed a motion for extension of time until July 7, 2008, in which to file an amended complaint against Fedor and Seriological Institute, contending that he was "on the road" and would not return to his home until July 3.  Motion to Extend Deadlines to Amend Complanit [sic] Against Seriological Institute and Fedor at 1 (Doc. 41).  But McDow never submitted a motion to amend with an attached amended complaint.  He also never responded to the State Defendants' and Gonzales' arguments that his claims against them should be dismissed for the same reasons as the Court dismissed the claims against the County Defendants.  Instead, at the July 28, 2008, hearing, McDow stated: "I'm waiting to see what your order is today, and then this week I'll file my notice of appeal."  Transcript of Hearing at 9:19-21 (McDow)(taken July 28, 2008)("July 28, 2008 Tr.").[3]  He then orally withdrew his motion for an extension of time.  See id. at 12:16.

## ALLEGATIONS IN THE COMPLAINT

McDow's Complaint is titled: "Civil Rights Complaint Pursuant to Title 42 U.S.C.A Section

---

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page numbers.

1983." Complaint at 1.  Although he was fairly specific in his previous § 1983 Complaint about what each Defendant allegedly did to violate his constitutional rights, McDow's current § 1983 Complaint makes general preliminary statements of alleged fact that encompass many of the Defendants.  It appears, however, that all of McDow's claims arise out of his November 5, 2003 arrest and August 26, 2004 criminal trial, and that the acts of which he complains allegedly caused his convictions, violated his "core U.S. Constitutional rights," and resulted in his financial losses:

> [O]n November 5, 2003 the plaintiff was arrested on (1) count of kidnapping; (4) counts of criminal sexual penetration in the second degree; (1) count of criminal sexual contact; (2) count of intimidation of a witness (1) count of tampering with evidence.  On August 23, 2004 a twelve member jury was assembled for trial on these above said charges Cause No. CR-2003-520.  On August 26, 2004 the jury in this criminal trial returned a verdict of Not Guilty on (3) count [sic] of criminal sexual penetration, (2) count [sic] of Intimidation of a witness; The state court of New Mexico directed a verdict of not guilty as to criminal sexual contact (1) count ; [] and the state having dismissed (1) count of criminal sexual penetration; and returning a verdict of Guilty on (1) count of False imprisonment and (1) count of tampering with evidence. The Defendants knowingly, willingly, and intentionally used erroneous statements, and evidence to obtain warrants, which led to a grand jury indictment, a trial, and subsequently leading to be found not guilty, by which resulted in a conviction of just (1) count of Intimidation of a witness, and Tampering with evidence.
>
> This case, due to the defendant's [sic] actions and chicanery, cause [sic] a severe financial loss upon the plaintiff.   The plaintiff [sic] core U.S. Constitutional Rights has [sic] been severely violated with no adequate remedy other than this action to bring closure to this incident.
>
> The plaintiff is prepared in this case to prove the false testimonies, among other erroneous procedures done by the defendants that will indicate such violations.
>
> Due to the above said actions done by the defendants, the plaintiff has taken a severe lost [sic] of property, and company earnings, etc. in a considerable high value that warrants federal judicial review.  The plaintiff is further prepared to prove against the defendants that will Illustrate gross corruption and a quality of no checks and balances within state government to allow state employee's [sic] acting under the color of state law [sic] carry on such methods, with no acknowledgment nor action taken upon the state, within its respective agencies to allow such derelict [sic] of duties performed by law enforcement agencies.  District Attorneys office should not be allow [sic] to control both sides.  By allowing two Deputy District Attorney [sic]

> to leave and take over the Public Defenders office violates not just Plaintiff [sic] U.S.
> Constitutional Rights but others who went throw [sic] the public defenders office.
> Both Plaintiff trail [sic] attorney [sic]  had actively participated, as prosecutors, in
> the preparation of the State's case against me.  This unconscionable conflict of
> interest requires a Federal Judicial Review.

Complaint at 1-2. McDow divides his Complaint into two "causes of action."  He states that the first

set of three claims is "[b]ased upon findings of facts pertaining to the criminal proceedings," and

on the "defendants' actions of using false information, and misleading the court to keep the plaintiff

in custody and to obtain the warrants, indictment, which led to a jury trial having returned a verdict

of not guilty on nearly all counts. . . . and returning a verdict of Guilty on (1) count of False

imprisonment and (1) count of tampering with evidence."  Complaint at 2.  McDow's first claim is

for "False Imprisonment."  He alleges that "the defendants knowingly, willingly, and intentionally

used false information to proceed with charging the plaintiff" after his arrest on November 5, 2003.

Id. at 2.  He contends he "was not given a fair opportunity to proceed to make bail," and that the

district attorney "falsely stated . . . that there was [sic] outstanding warrants pending."  Id. at 2-3.

McDow's second claim is titled "Violation of Attorney Client Priviledge [sic]."  Id. at 3.

McDow alleges:

> Defendants concealed evidence at trial knowing that such evidence would point in
> the direction of an acquittal of possibly all counts listed in the plaintiff's indictment.
> Furthermore there were statements that were withheld from being entered during trial
> that would have resulted in a favorable out come for the plaintiff.  This said
> evidence, and statements that was withheld was also considered privilege
> information from the plaintiff's public defender who carelessly turn [sic] this said
> privileged information over to the Otero County Sheriffs Department by which this
> was also turned over to the District Attorneys Office.

Id.  McDow's third claim is titled "Violation of Civil Due Process."  McDow alleges:

> The District Attorney Office has illustrated a blatant abuse of the plaintiff's due
> process right to make bail by stating erroneous information that was misleading to
> the court which led to a denial of the plaintiff's right to make bail.  Furthermore the
> plaintiff suffered financial losses of his company's earnings and the lost of his real

> estate property and Diesel Truck  The plaintiff was further violated by being denied
> his right to a speedy trial based upon the Defendants six month rule.

Id.  McDow's "second cause of action," which consists of two claims, is

> based on the abuses of authority upon the plaintiff, the defendants exceeded beyond
> the question of abuse of what is there [sic] sworn duty to uphold the law instead the
> defendants within its internal operations allows such chicanery in the procedures of
> state employee's [sic] acting under color of state law without any severe reprimands,
> or checks and balances to insure against corruption.

Complaint at 3.  McDow's fourth claim is titled "Abuse of Authority."  He alleges:

> The Defendants Abused there [sic] powers to circumvent the course of justice.
> Employee's [sic] operating under the color of state law bears the responsibility in
> upholding the letter of the law through integrity. The defendants abused there [sic]
> authority by performing there [sic] duties under the iron curtain of the state, utilizing
> this said authority to unjustly pervert the course that would have otherwise made a
> favorable outcome for the plaintiff.

Id.  McDow titles his fifth claim "Dereliction of Duty."  He alleges:

> The Plaintiff asserts this claim of dereliction of duty due to the fact that the
> defendants failed to carry out there [sic] duties as to what they are sworn to uphold.
> The defendants withheld certain documentations in there [sic] reports intentionally
> so that the plaintiff can be prosecuted.  This said withheld [sic] of documents of there
> [sic] reports stemmed from there [sic] investigation that could of made a difference
> in the outcome of justice favorable to the plaintiff.  The defendants made every effort
> to see that such reports would not be admitted in to trial thus making it obvious as
> to the outcome that would have been favorable.

Id. at 3-4.

McDow requests damages in the amount of $400,000.00 "due to the financial loss of
plaintiff's real estate," as well as "compensatory damages against the defendants due to the financial
loss of company earnings," which both apparently occurred while McDow served his prison
sentence for the two criminal convictions.  Id. at 4.  He also requests punitive damages for "mental
anguish and severity of gross intentional affliction and abuse of authority."  Id.

## LAW REGARDING MOTIONS TO DISMISS

The United States Court of Appeals for the Tenth Circuit has set forth new standards that

courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal

Rules of Civil Procedure in a § 1983 cause of action.

> Bell Atlantic Corp. v. Twombly [] reject[ed] the "no set of facts" language of
> Conley[ v. Gibson, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified)
> standard: to withstand a motion to dismiss, a complaint must contain enough
> allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----,
> ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  Under this revised standard,
> as we explained in Ridge at Red Hawk, L.L.C. v. Schneider:
>
> > the mere metaphysical possibility that some plaintiff could prove
> > some set of facts in support of the pleaded claims is insufficient; the
> > complaint must give the court reason to believe that *this* plaintiff has
> > a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the
> plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest"
> that he or she is entitled to relief.  Twombly, 127 S. Ct. at 1965.  "Factual allegations
> must be enough to raise a right to relief above the speculative level." Id.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(applying Bell Atlantic Corp. v.

Twombly in a case brought under § 1983).  The Tenth Circuit emphasized that

> 'plausibility' in this context must refer to the scope of the allegations in a complaint:
> if they are so general that they encompass a wide swath of conduct, much of it
> innocent, then the plaintiffs have not nudged their claims across the line from
> conceivable to plausible.  The allegations must be enough that, if assumed to be true,
> the plaintiff plausibly (not just speculatively) has a claim for relief.

Id. (internal quotation marks, citation, and footnote omitted).

> This requirement of plausibility serves not only to weed out claims that do
> not (in the absence of additional allegations) have a reasonable prospect of success,
> but also to inform the defendants of the actual grounds of the claim against them.
> "Without some factual allegation in the complaint, it is hard to see how a claimant
> could satisfy the requirement of providing not only 'fair notice' of the nature of the
> claim, but also 'grounds' on which the claim rests." [Bell Atlantic v. Twombly, 127
> S. Ct.] at 1965 n. 3.  See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.,
> 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint

may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The <u>Twombly</u> Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." <u>Id.</u>

The Third Circuit has noted, and we agree, that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context: "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case. . . ." <u>Phillips</u>, 515 F.3d at 231-32. A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time.

\* \* \* \*

[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The <u>Twombly</u> standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." <u>Anderson</u>, 483 U.S. at 646 n. 6, 107 S.Ct. 3034; <u>Harlow</u>, 457 U.S. at 818, 102 S.Ct. 2727. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, <u>Twombly</u>, 127 S.Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

<u>Robbins v. Oklahoma</u>, 519 F.3d at 1248-49. Thus, in cases in which government actors are also sued in their individual capacities and the plaintiff alleges violation of his constitutional rights, such as due-process rights, "it is particularly important . . . that the complaint make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." <u>Robbins v. Oklahoma</u>, 519 F.3d at 1250 (emphasis in original).

On June 12, 2008, the Tenth Circuit issued an unpublished opinion affirming a district court's dismissal with prejudice for failure to state a claim on a plaintiff's claim brought under §

1983.  See Dalton v. City of Las Vegas, No. 07-2216, 2008 WL 2372695 (10th Cir. June 12, 2008)(unpublished).  In the district court, the Honorable Judge Karen B. Molzen, United States Magistrate Judge for the District of New Mexico, ruled "that all of Mr. Dalton's civil rights claims were too conclusory to comply with the pleading standard set forth in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007)."  Dalton v. City of Las Vegas, 2008 WL 2372695 at *1.  The Tenth Circuit noted that:  "'[t]he core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an actionable constitutional violation.'"  Dalton v. City of Las Vegas, 2008 WL 2372695 at *1 (quoting Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007)).  Id.  The Tenth Circuit stated in Dalton v. City of Las Vegas:

> Mr. Dalton's complaint does not challenge an established city procedure as lacking in due process, a claim that would clearly be actionable under § 1983. . . . Mr. Dalton has put forth a simple claim for the state-law tort of conversion, but he has not alleged sufficient facts to proceed under § 1983.  He has thus failed to allege an actionable constitutional violation and has failed "to state a [§ 1983] claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1974.  The district court was correct to dismiss the claim.

Dalton v. City of Las Vegas, 2008 WL 2372695 at **1-2.

Because McDow proceeds pro se, the Court liberally construes his Complaint.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  But "[t]he broad reading of the [pro se] plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based."  Id.

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint.  Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.  This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted.  Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his

conclusory allegations.

Id. (citations omitted).  The Tenth Circuit has held that "a court should allow a [pro se] plaintiff an opportunity to cure technical errors or otherwise amend the complaint <u>when doing so would yield a meritorious claim</u>." <u>Curley v. Perry</u>, 246 F.3d 1278, 1284 (10th Cir. 2001) (emphasis added).  It is not, however, "the proper function of the district court to assume the role of advocate for the pro se litigant." <u>Hall v. Bellmon</u>, 935 F.2d at 1110

**LAW REGARDING ACCRUAL OF CLAIMS AND
<u>THE STATUTE OF LIMITATIONS IN § 1983 CLAIMS</u>**

>      A hodgepodge of state and federal law governs the timeliness of claims under
> 42 U.S.C. § 1983.  The statute of limitations is drawn from the personal-injury
> statute of the state in which the federal district court sits. <u>Wilson v. Garcia</u>, 471 U.S.
> 261, 269, 105 S. Ct. 1938, 85 L. Ed.2d 254 (1985).  Federal law, however,
> determines the date on which the claim accrues and the limitations period starts to
> run. <u>Wallace[ v. Kato]</u>, 127 S. Ct. at 1095.  State law governs any tolling of that
> period, <u>Wilson</u>, 471 U.S. at 269, except that federal law might also allow additional
> equitable tolling in rare circumstances, <u>Wallace</u>, 127 S. Ct. at 1099-1100. . . . [T]he
> New Mexico statute of limitations is three years.  N.M. Stat. Ann. § 37-1-8.

 <u>Mondragon v. Thompson</u>, 519 F.3d 1078, 1082 (10th Cir. 2008).

 Generally, "[§] 1983  claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action," so "[c]laims alleging denial of a fair trial are presumed to have accrued at the time the trial concludes." <u>Johnson v. Johnson County Comm'n Bd</u>., 925 F.2d 1299, 1301 (10th Cir.1991)(internal quotation marks omitted).   "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." <u>Id.</u>

 In <u>Wallace v. Kato</u>, 127 S. Ct. 1091 (2007), the Supreme Court of the United States clarified and refined when the limitations period begins to run on a  § 1983 claim for false arrest and false

-14-

imprisonment.  It held that the two torts may both be referred to as a "detention without legal

process."  Id. at 1095 (emphasis in original).   The limitations period on such a claim begins to run

"when the alleged false imprisonment ends," which occurs when "the victim becomes held pursuant

to [legal] process-- when, for example, he is bound over by a magistrate or arraigned on charges."

Id. at 1096 (emphasis in original).  "[A]fter [the institution of legal process], unlawful detention

forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies

detention accompanied, not by absence of legal process, but by wrongful institution of legal

process."  Id. (emphasis in original).

The Tenth Circuit recently issued an opinion applying Wallace v. Kato and further clarifying

the difference between a Fourth-Amendment § 1983 false arrest/false imprisonment claim based

upon an arrest without a warrant and a Fourth Amendment § 1983 malicious-prosecution claim

based upon an arrest with a warrant.

> Unlike a false arrest or false imprisonment claim, malicious prosecution concerns
> detention only after the institution of legal process.  In this context, a Fourth
> Amendment violation can exist only when a plaintiff alleges the legal process itself
> to be wrongful.  If a plaintiff challenges merely the confinement after the institution
> of legal process, but not the process itself, the protections offered by the Fourth
> Amendment do not apply.
>
> Depending on the circumstances of the arrest, a plaintiff can challenge the
> institution of legal process as wrongful in one of two ways.  If arrested without a
> warrant – and thus triggering the Fourth Amendment requirements of a judicial
> determination of probable cause as a prerequisite to extended restraint of liberty
> following arrest – a plaintiff can challenge the probable cause determination made
> during the constitutionally-required probable cause hearing.  Or, if arrested pursuant
> to a warrant, plaintiff can challenge the probable cause determination supporting the
> warrant's issuance.  Either way, the allegation would state a Fourth Amendment
> violation sufficient to support a § 1983 malicious prosecution cause of action.
>
> In this case, Plaintiffs were detained pursuant to arrest warrants.  At common
> law, the issuance of an arrest warrant presents a classic example of the institution of
> legal process.  Plaintiffs' detention was thus preceded by the institution of legal
> process, triggering the malicious prosecution cause of action.  In challenging that

-15-

process by alleging the officers knowingly supplied false information in affidavits for the warrants, Plaintiffs based their malicious prosecution claim on the Fourth Amendment right against unreasonable seizures.

Under our cases, a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

Wilkins v. DeReyes, Nos. 06-2245 and 06-2260, 2008 WL 2391244 at **6-7 (10th Cir. June 13, 2008)(internal quotation marks, citations, brackets, and footnote omitted)(emphasis in original).

In Wilkins v. DeReyes, the plaintiffs established the second element of their § 1983 claim based on malicious prosecution because the district attorney dismissed murder charges against them after juries twice could not reach a verdict and "mistrials were declared." 2008 WL 2391244 at **8, 28-29. In the situation in which a § 1983 plaintiff has been convicted and is in essence challenging the prosecution leading to that conviction, a malicious prosecution claim does not mature until the conviction has been invalidated. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Thus, in Mondragon v. Thompson, the Tenth Circuit confirmed that, "[b]ecause the statute of limitations does not start running before the elements of a claim are satisfied, the statute of limitations for [a] due process claim [based on malicious prosecution] cannot start until the plaintiff has achieved a favorable result in the original action." 519 F.3d at 1083 (footnote omitted).

Accordingly, Heck v. Humphrey requires dismissal of a § 1983 complaint if the claims are based on malicious prosecution unless the plaintiff presents evidence that his related convictions have been overturned. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512

-16-

U.S. at 487.  Those claims are barred until that showing is made -- i.e., no new cause of action may be filed until that time.  See Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999)(holding that, "for § 1983 claims necessarily challenging the validity of a conviction or sentence, Heck delays the rise of the cause of action until the conviction or sentence has been invalidated.  Because the cause of action does not accrue until such time, the applicable statute of limitations does not begin to run until the same time."); Robinson v. Maruffi, 895 F.2d 649, 654-44 (10th Cir. 1990)(holding that § 1983 claim for malicious prosecution accrues when the criminal proceeding has terminated in the plaintiff's favor); Lawson v. Engleman, 67 Fed. Appx. 524, 526 n.2 (10th Cir. 2003)(holding that even "claims for declaratory and injunctive relief are barred under Heck" until a conviction is overturned).

> Although a dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice, when a § 1983 claim is dismissed under *Heck*, the dismissal is without prejudice.  [See] Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003). "If the plaintiff is later successful in overturning his conviction, he is allowed to bring his § 1983 action at that time." Id.

Higgins v. City of Tulsa, 103 Fed. Appx. 648, 651 (10th Cir. 2004)(emphasis in original).

## ANALYSIS

The State Defendants and Gonzales have joined the County Defendants' motion to dismiss, and urge dismissal of McDow's claims against them for the same reasons stated in the Court's June 23, 2008 Order.  The Court noted at the July 28, 2009 hearing that a different analysis may apply to Gonzales as a private party, and the parties agreed.  The Court dismissed McDow's § 1983 claims against the County Defendants because § 1983 claims based on allegations of malicious abuse of process have not accrued.  Because the same principles apply to the State Defendants, the Court will dismiss McDow's Complaint against the State Defendants.  But because McDow has alleged no facts indicating that Gonzales is a state actor or that she conspired with prosecutors to secure

McDow's convictions, the Court will dismiss all § 1983 claims against her for failure to state a claim.

I.      **§ 1983 CLAIMS HAVE NOT ACCRUED AGAINST THE STATE DEFENDANTS.**

McDow's Complaint states that he was arrested with a warrant on November 5, 2003, and that his trial concluded on August 26, 2004, and resulted in two convictions. See Complaint at 1. "Heck applies only to those claims that would necessarily imply the invalidity of any conviction that might have resulted from prosecution of the dismissed [] charge." Beck v. City of Muskogee Police Dep't, 195 F.3d at 557. "[E]ach [] claim[] must be assessed individually to determine whether it has yet matured, and if so, when it matured for purposes of applying the statute of limitations." Id. McDow's claim for damages is based on losses allegedly resulting from the two criminal convictions that he contends were wrongfully obtained by the false testimony, errors, and abuses of state and county employees and trial witnesses. "*Heck* [v. Humphrey] requires a court considering a § 1983 damage claim relating to a plaintiff's conviction to determine whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction; if so, then the plaintiff must obtain invalidation of the conviction before pursuing his action for damages." Laurino v. Tate, 220 F.3d 1213, 1217 (10th Cir. 2000). The Court has examined each of McDow's claims against the State Defendants to determine whether they call into question the validity of his convictions and whether they are analogous to malicious prosecution claims.

McDow's claim that "the defendants knowingly, willingly, and intentionally used false information to proceed with charging the plaintiff" after his arrest, Complaint at 2, appears to be against the state prosecutors and is a malicious prosecution/due-process claim because it occurred after legal proceedings commenced. See Wallace v. Kato, 127 S. Ct. at 1095-96; Mondragon v. Thompson, 519 F.3d at 1083. McDow's claims that "Defendants concealed evidence at trial" and

that his "public defender [] carelessly turn [sic]. . . privileged information over to the Otero County

Sheriffs Department by which this was also turned over to the District Attorneys Office," Complaint

at 2, are also against the state prosecutors and public defenders, and are also malicious

prosecution/due-process claims.

McDow's claims that "[t]he District Attorney Office has illustrated a blatant abuse of the

plaintiff's due process right to make bail by stating erroneous information . . . [and by denying

McDow] his right to a speedy trial" similarly are against the state prosecutor, and are malicious

prosecution/due-process claims.  While it is less clear whom McDow is including in his claim for

"abuse of authority," his allegations that the claim is based on "procedures of state employee's [sic]

acting under color of state law" and that the "defendants abused there [sic] authority by performing

there [sic] duties under the iron curtain of the state, utilizing this said authority to unjustly pervert

the course that would have otherwise made a favorable outcome for the plaintiff," Complaint at 3,

indicates that the claims are against the state employees involved in his arrest, prosecution, or

defense, and are for malicious prosecution/due-process violations, see Mondragon v. Thompson, 519

F.3d at 1083.

McDow's claim for "dereliction of duty," which is based on "procedures of state employee's

[sic] acting under color of state law," Complaint at 3, also appears to be against the district attorneys

who prosecuted his case.  McDow asserts that these "defendants withheld certain documentations

in there [sic] reports intentionally so that the plaintiff can be prosecuted . . . and made every effort

to see that such reports would not be admitted in to trial." Id. at 3-4.  Because it relates to his trial,

this claim is also one for malicious prosecution/due process.  See Mondragon v. Thompson, 519

F.3d at 1083.

All of McDow's claims are brought under § 1983 and all challenge the validity of his

convictions.  Because he was arrested with legal process, i.e., with a warrant, McDow's § 1983 claims based on his arrest are for due-process violations analogous to malicious prosecution.  See id. at 1082-83; Wilkins v. DeReyes, 2008 WL 2391244 at *7.  Similarly, McDow's § 1983 claims based on his allegations that state employees were somehow "derelict" in their duties; that his attorneys were ineffective, had conflicts of interest, or violated attorney-client privileges, causing him to be wrongly convicted; and that witnesses such as Ms. Gonzales intentionally lied about reports, investigations, or gave false testimony about what occurred, all fall under the rubric of a due-process/malicious-prosecution violation.  See Mondragon v. Thompson, 519 F.3d at 1083 ("After the institution of legal process, any remaining constitutional claim is analogous to a malicious prosecution claim.").  Any viable § 1983 claims he could potentially state will not begin to accrue, and are therefore barred, until McDow "has achieved a favorable result in the original action."  Id.  Because McDow's convictions have been upheld on appeal and both his state and his federal habeas petitions have been denied with no appeal taken from those denials, it is unlikely that these claims will ever accrue.

In opposing the County Defendants' motion to dismiss, McDow referred to the civil case that Defendant Gonzales filed and contended:  "Once discovery was turned over by [the] Attorneys for Plaintiff Christine Gonzales and ROXEANNE B. ESQUIBEL, 12 Judicial District Attorney office.  Plaintiff then had knowledge of the fact of injury and who caused it."  McDow's Response in Opposition to County Defendants' Motion to Dismiss at 2, filed April 12, 2008 (Doc. 18).  At the June 13, 2008 hearing, McDow again focused on the "facts" to which he contends the discovery rule applies:  (I) "I was being not just tried by the state[,] I've been represented by the state," June 13, 2008 Tr. at 15:17-18 (McDow); (ii) that he did not know until "May 12th[, 2008] when it was testified that the county knowingly knew when they filed these charges that they were false. " id.

at 17:14-16 (McDow)[4]; and (iii) "it wasn't until May 12th[, 2008] when Mrs. Gonzale[s] . . . was asked, [']when did you tell law enforcement that you were not kidnapped from a truck stop[,']" id. at 18:8-13 (McDow).  McDow's first § 1983 Complaint, filed in March 2006, and his answer to Gonzales' amended civil complaint against him filed in December 2006, however, demonstrate as a matter of law that McDow was aware of the wrongful or illegal behavior that he alleges caused his damages before he obtained discovery in Gonzales' case against him.  See McDow v. Esquibel, No. CIV 06-0045 JB/LFG, Memorandum Opinion and Order at 2, filed April 13, 2006 (Doc. 10); Gonzales v. McDow, No. CIV 06-0054, Doc. 1, Ex. C.  As Gonzales' attorney pointed out at the June 13, 2008 hearing, see June 13, 2008 Tr. at 45:5-16 (Pustay), in his original answer filed April 4, 2006, and in his answer to Gonzales' amended complaint filed on December 15, 2006, McDow states:  "Defendant will produce additional facts to show plaintiff repeatedly changed her story, starting from alleging the kidnapping of herself and an anonymous friend.  Then she changed her story to only she was kidnapped from a truck stop in Vaughn, New Mexico.  She later changed her statement again, to admitting that she was not kidnapped."  Gonzales v. McDow, No. CIV 06-0054, Doc. 1, Ex. C  at 2.  When the Court pressed McDow further to explain why he contended that the discovery rule applies, McDow stated:  "At that time I was not fully aware of the damages that the

_____

[4] The Court notes that, even if Gonzales recanted her statement that she was kidnapped from the truck stop in Vaughn, it would not necessarily mean that McDow could not be charged with, and found guilty of, kidnapping.  In New Mexico, kidnapping includes taking or confining a victim by deception with the intent to inflict a sexual offense on the victim. See N.M.S.A. 1978, § 30-4-1.  A "kidnapping begins when the victim is initially confined and ends when the victim is released." State v. Dombos, 2008-NMCA-035, ¶ 12, 180 P.3d 675, 680.  Thus, even if Gonzales willingly accepted a ride with McDow, as he contends and she later apparently admitted, if his intent at the time he drove away with her included the intent to commit a sexual offense, he might be convicted of kidnapping even if Gonzales initially went with him voluntarily.  Gonzales never recanted her allegation that McDow raped her, thus investigators and prosecutors could properly go forward with a charge that included kidnapping and the lesser-included offense of false imprisonment, for which McDow was convicted.

county and the state did." June 13, 2008 Tr. at 18:22-23 (McDow)(emphasis added). Importantly, however, McDow's argument that the discovery rule extends the statute of limitations on his § 1983 claims is irrelevant, because the "evidence" he allegedly has recently discovered challenges his conviction for false imprisonment; his § 1983 claims for malicious prosecution will not accrue until he obtains a favorable result in his criminal case; and he has not stated any facts indicating that he has any § 1983 claim associated with the "newly discovered" evidence. Accordingly, the Court will dismiss McDow's § 1983 Complaint against the State Defendants without prejudice under Heck v. Humphrey.   See Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003)("For example, when a § 1983 claim is dismissed under Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), for failure to invalidate a conviction before bringing the civil-rights action, the dismissal should be without prejudice.").[5]

---

[5] McDow brings only claims under § 1983. There are no facts in the Complaint indicating that McDow is trying to bring state-law claims against anyone. Moreover, McDow did not contend in his written response to the County Defendants' motion to dismiss that he has viable state-law causes of action that he did not plead that are not barred by statutes of limitation. There is no motion to amend, as the Court has decided it. At the July 28, 2008 hearing McDow did not argue that the Court erred on the issue of potential state-law claims in the Court's June 23, 2008 Memorandum Opinion and Order. See Memorandum Opinion and Order at 28-29, filed June 23, 2008 (Doc. 40) ("The Court also does not see how McDow could effectively amend against the State Defendants in the circumstances in which his claims all relate to the arrest occurring in November 29, 2003 and the trial in August 2004. Any claim related to these events, whether it is a state-law or § 1983 claim, would most likely be barred either by the two-year statute of limitations for state-law tort claims against government officials or because it would not yet have accrued under § 1983."). McDow did not ask the Court to allow him to amend the Complaint at the July 28, 2008 hearing. He stated only that he wants to appeal the case. Accordingly, there is no attempt to bring state-law causes of action.

McDow stated at the June 13, 2008 hearing that, regarding the County Defendants, he "was going to . . . just go away from the 1983 and go to New Mexico tort, but you know I'll just have to see what your rulings are today." June 13, 2008 Tr. at 32:14-17 (McDow). He again contended that the discovery rule should apply to the relevant statute of limitations because the state "prevented me from knowing the full injuries, since the state not just prosecuted me but represented me . . . and as representing me they hid a lot of information." Id. at 33:3-7 (McDow). Even if, however, the Court liberally construed his Complaint to potentially include state-law claims for malicious abuse of process,  intentional infliction of emotional distress, assault, battery, or false imprisonment, they,

## II.   McDOW HAS STATED NO FACTS TO SUPPORT A § 1983 CLAIM AGAINST GONZALES.

To state a claim under § 1983, a claimant must show: (I) deprivation of a right that the federal constitution or federal laws secure; and (ii) that a person acting under color of state law caused the deprivation.  See West v. Atkins, 487 U.S. 42, 48 (1988).  For a private individual, like Ms. Gonzales, to be acting under color of state law, the deprivation of a federal right "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

> Congress did not, in using the term "under the color of state law," intend to subject private citizens, acting as private citizens, to a federal lawsuit whenever they seek to initiate a prosecution or seek a remedy involving the judicial system.  To hold otherwise would significantly disregard one purpose of the state action requirement, which is to "preserve[ ] an area of individual freedom by limiting the reach of federal

---

too might be barred.  New Mexico's personal-injury statute provides that "[a]ctions must be brought . . . for an injury to the person or reputation of any person, within three years."  N.M.S.A. 1987, § 37-1-8.  And "actions against a . . . public employee for torts shall be forever barred unless such action is commenced within two years after the date of occurrence resulting in loss."  N.M.S.A. 1978, § 41-4-15.  See Sam v. Sam, 2006-NMSC-022, ¶ 23, 134 P.3d 761, 767.

McDow was arrested on November 5, 2003, and convicted on August 26, 2004.  In New Mexico, a state-law claim for malicious abuse of process does not require a favorable termination before a plaintiff brings the claim, and the state statute of limitations begins to run as soon as the plaintiff knows of the facts on which he or she is basing the claim.  Any potentially viable state-law claim for malicious abuse of process against Gonzales or the State Defendants based on McDow's arrest and prosecution probably accrued, at the latest, on August 26, 2004, and his December 15, 2007, Complaint is, therefore, likely untimely.  See United States v. Hurst, 322 F.3d 1256, 1260 (10th Cir. 2003)(holding that, generally, "when a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the relevant act, . . . even when the intervening period includes the extra leap-year day")(internal quotation marks omitted).

law and federal judicial power." *Lugar*, 457 U.S. at 936, 102 S. Ct. 2744. Instead, in enacting § 1983, Congress intended to provide a federal cause of action primarily when the actions of private individuals are undertaken with state authority. *See id.* at 934, 102 S. Ct. 2744. Thus, absent more, causing the state, or an arm of the state, to initiate a prosecution or serve process is insufficient to give rise to state action.

How v. City of Baxter Springs, No. 06-3022, 217 Fed. Appx. 787, 793, 2007 WL 533881, **5 (10th

Cir. Feb. 22, 2007)(unpublished).

[P]rivate parties may be considered state actors where they are "willful participant[s] in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L. Ed. 2d 185 (1980). Nevertheless, we may not find joint action based alone on "the mere acquiescence of a state official in the actions of a private party," *see Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)); instead, we "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights," *Id.* In applying this test, courts have taken two approaches. Some courts employ a "conspiracy approach" pursuant to which "state action may be found if a state actor has participated in or influenced the challenged decision or action." *Id*. at 1454. Other courts "hold that, if there is a substantial degree of cooperative action between state and private officials, or if there is overt and significant state participation in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." *Id*.

Id., 217 Fed. Appx. at 795, 2007 WL 533881 at **7. While "the goal of successfully prosecuting

the accused" is "the same common goal shared between a private citizen and a prosecutor whenever

a private citizen presses criminal charges" against the accused, "that common goal is insufficient

for a private citizen . . . to be considered a state actor." Id., 217 Fed. Appx. at 796, 2007 WL 533881

at **8. See Taylor v. Nichols, 558 F.2d 561, 564 (10th Cir. 1977) (holding that "[t]he acts of filing

a claim and testifying at trial do not constitute state action"); Benavidez v. Gunnell, 722 F.2d 615,

618 (10th Cir. 1983) (holding that "[t]he mere furnishing of information to police officers does not

constitute joint action under color of state law which renders a private citizen liable under §§ 1983

or 1985."). "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by

implicating state officials . . . in a conspiracy with private defendants, mere conclusory allegations

with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." <u>Sooner Products Co. v. McBride</u>, 708 F.2d 510, 512 (10th Cir. 1983).  Ms. Gonzales is not mentioned in the body of the complaint by name, and none of the numbered claims or causes of action indicate that they are brought against a private citizen. There are no allegations of conspiracy in McDow's Complaint, and the Court may "not supply additional facts," nor should it "construct a legal theory for plaintiff that assumes facts that have not been pleaded." <u>Dunn v. White</u>, 880 F.2d 1188, 1197 (10th Cir. 1989).  In short, McDow has failed to state enough facts regarding Ms. Gonzales to "plausibly (not just speculatively) [state] a claim for relief" and his complaint against her must be dismissed.  <u>Robbins v. Oklahoma</u>, 519 F.3d at 1247.[6]

      **IT IS ORDERED** that Gonzales' Notice of Joinder and the State Defendants' Notice of Joinder are granted and McDow' Motion for Extension of Time to Amend is terminated, that Gonzales' motion to dismiss for failure to state a claim is granted and the complaint against her is dismissed with prejudice, and the State Defendants' motion to dismiss is granted and the complaint against them is dismissed without prejudice.

                                        _____
                                    UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Kennedy McDow, Sr.
Atwater, California

      *Plaintiff Pro Se*

---

    [6]  At the July 28, 2008, hearing, McDow did not express interest in again amending his complaint and urged the Court to quickly enter a judgment so that he could appeal the case.  <u>See</u> July 28, 2008 Tr. at 16:2-6 (Court, McDow).

Rob T. Booms
Butt, Thornton & Baehr
Albuquerque, New Mexico

> *Attorneys for Defendants Serological Institute and Thomas Fedor*

Louren Oliveros
Mark Pustay
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant Christine M. Gonzales*

Stephen G. French
Kerri L. Allensworth
French & Associates, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants State of New Mexico, New Mexico State Police, Roxanne B. Esquibel, Melissa Armstrong, and George Bernal*

Patrick Simpson
Legal Bureau for the State Risk Management Division
Santa Fe, New Mexico

> *Attorneys for Defendants Canon Stevens and Michael Kwasniewski*

Jonlyn M. Martinez
William D. Slease
Slease & Martinez, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants Otero County Sheriff's Office, John Blansett, Norbert Sanchez, William Woltz, Leon Ledbetter, Lisa Delorm, Eduardo Medrano, and Robbie Virden*